## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Benjamin Mario Soto,

                        Plaintiff,               **Civil File No: 13-cv-640 (DWF/SER)**

v.

John Defendants 1–5, each individually and
in their official capacities as officials and
employees of the Minnesota Bureau of         **REPORT AND RECOMMENDATION**
Criminal Apprehension

                        Defendants.

---

      Ochen D. Kaylan, Esq., Robins Kaplan Miller & Ciresi LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, Minnesota 55402, for Plaintiff.

      Elizabeth M. Jones, Esq., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, Minnesota 55101, for Defendants.

---

STEVEN E. RAU, United States Magistrate Judge.

      The above-captioned case comes before the undersigned on Defendants' Motion to Dismiss [Doc. No. 72]. This matter has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and (C), and District of Minnesota Local Rule 72.1. *See* (Order of Reference Dated Sept. 26, 2013) [Doc. No. 46]. For the reasons stated below, the Court recommends Defendants' Motion to Dismiss be granted and Plaintiff Benjamin Mario Soto's ("Soto") Second Amended Complaint be stricken.

# I.    BACKGROUND

## A.    Factual Background

Soto alleges the following facts in his First and Second Amended Complaints.[1]

The Minnesota Bureau of Criminal Apprehension ("MNBCA") is a part of a state agency and a public employer.  (First Amended Complaint, "FAC") [Doc. No. 70 ¶ 17]; (Second Amended Complaint, "SAC") [Doc. No. 77 ¶ 17].   AccessAbility, Inc. ("AAI") provides employee training and job placement for persons with employment barriers.  (FAC ¶ 4); (SAC ¶ 4).  Soto was a client of AAI.  (FAC ¶ 4); (SAC ¶ 4).  Defendants are "employees and/or officials of the MNBCA who are given authority by the State of Minnesota to exercise, and supervise the exercise of, the power to hire public employees."  (FAC ¶ 18); (SAC ¶ 18).

In early 2012, the MNBCA, through AAI, offered Soto a ten-month contract position with the MNBCA set to begin on February 13, 2012.  (FAC ¶ 5); (SAC ¶ 5).  Soto passed all necessary application and interview sections.  (FAC ¶ 23); (SAC ¶ 23).  The employment offer was contingent, however, on Soto passing a criminal background check.  (FAC ¶¶ 5, 23); (SAC ¶¶ 5, 23).  Three female clients of AAI were offered similar employment also contingent upon criminal background checks.  (FAC ¶ 6); (SAC ¶ 6).

The MNBCA ran a criminal background check on Soto, which showed that he had never been convicted of a crime and was arrested once for "Terroristic Threats—Reckless Disregard Risk" for which he was acquitted based on mental deficiency.  (FAC ¶¶ 7–8, 22); (SAC ¶¶ 7–8, 22).  Soto's criminal background check also showed that an Order for Protection ("OFP") was

---

[1]    The parties disagree whether the First or Second Amended Complaint is operative; the Court addresses the issue below.

issued against him in November 2012.[2]  (FAC ¶ 9); (SAC ¶ 9).   After receipt of Soto's criminal background check, Soto alleges that certain Defendants determined that he was "not cleared" for work leading to withdrawal of the MNBCA employment offer.[3]  (FAC ¶ 10); (SAC ¶ 10).  When Soto was informed of the withdrawn employment offer, he contends certain Defendants indicated that the results of his criminal background check, specifically the OFP, prompted the withdrawal.  (FAC ¶¶ 11, 14); (SAC ¶¶ 11, 14).  Soto also alleges inconsistently that Defendants never discussed his criminal background check with him or asked about the basis for the OFP.  (FAC ¶ 13); (SAC ¶ 13).  The criminal background checks of the three other AAI clients who had been offered similar contracts with the MNBCA revealed criminal convictions, but those AAI clients were cleared for MNBCA employment.  (FAC ¶ 12); (SAC ¶ 12).  Thus, Soto alleges that certain Defendants reviewed his criminal background check, determined he was not cleared to work at the MNBCA, and decided he would not be hired because of the results of that check.  (FAC ¶ 19); (SAC ¶ 19).

Soto alleges one count, a violation of 42 U.S.C. § 1983, against all Defendants.  *See* (FAC ¶¶ 16–26); (SAC ¶¶ 16–26).  The Second Amended Complaint, however, adds in its caption a claim against Defendants in their individual capacities as well as their official capacities.  *See* (FAC); (SAC).  Soto alleges he has a due process right that protects him against

---

[2]      Although Soto states that the OFP was issued in November 2012, Defendants ask the Court to take judicial notice of their exhibit which they allege shows that the OFP against Soto was issued on November 28, 2011, and was not dismissed until December 31, 2012.  (Defs.' Mem. in Supp. of Mot. to Dismiss) [Doc. No. 73 at 3].  The Court takes judicial notice as Defendants request, however, this issue is not dispositive on the pending Motion to Dismiss.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint[.]'"); (Register of Actions, Ex. A, Attached to Decl. of Elizabeth M. Jones, "Jones Decl.") [Doc. No. 75-1].

[3]      Soto does not clarify beyond his allegation of "certain John Does."  *See* (FAC ¶ 10); (SAC ¶ 10).

deprivation of property interests to which he has a legitimate claim of entitlement, which can apply to certain government jobs.  (FAC ¶ 20); (SAC ¶ 20).  Soto alleges he had a legitimate claim of entitlement to the contract position at the MNBCA because his criminal background check did not give Defendants any information that could be used legitimately to withhold employment.  (FAC ¶ 24); (SAC ¶ 24).  Soto contends that he has been harmed in multiple ways including losing past and future income and opportunities because of Defendants' infringement of his civil rights.  (FAC ¶ 26); (SAC ¶ 26).

### B.    Procedural Background

On March 20, 2013, Soto filed his *pro se* Complaint alleging *inter alia* discrimination by the MNBCA and the United States Equal Employment Opportunity Commission.  (Compl.) [Doc. No. 1].  The Court referred Soto to the Minnesota Chapter of the Federal Bar Association's ("FBA") *Pro Se* Project on March 25, 2013.  (Letter Referring Litigation to FBA *Pro Se* Project) [Doc. No. 4]. After his initial filing, Soto made multiple submissions to the Court.  *See, e.g.*, (Proposed Voir Dire) [Doc. No. 7]; (Letter to Clerk's Office Dated Apr. 15, 2013) [Doc. No. 8]; (Notice Dated May 6, 2013) [Doc. No. 10]; (Letter Dated May 7, 2013) [Doc. No. 11]; (Exhibit Dated May 9, 2013) [Doc. No. 14].

On June 4, 2013, the case was referred to the Pilot Early Settlement Conference Project. (Order Referring Case) [Doc. No. 20].  Ochen Kaylan noticed his limited appearance in the case for the Early Settlement Conference.  (Notice of Limited Appearance) [Doc. No. 21].  After the Court's careful consideration, it determined that the case was no longer suitable for the Early Settlement Project and ended its referral.  (Order Dated Aug. 28, 2013) [Doc. No. 41].  Soto's submissions to the Court continued.  *See, e.g.*, (Letter Dated Aug. 29, 2013) [Doc. No. 42]; (Letter Dated Sept. 3, 2013) [Doc. No. 43]; (Notice Dated Sept. 20, 2013) [Doc. No. 44].  The

4

MNBCA then filed its first motion to dismiss.  (MNBCA's Mot. to Dismiss "First Mot. to Dismiss") [Doc. No. 47].

On October 17, 2013, Ochen Kaylan entered a Notice of Appearance on Soto's behalf. (Notice of Appearance) [Doc. No. 69].[4]  Soto filed his First Amended Complaint against Defendants in their official capacities as employees of the MNBCA on the same day.  *See* (FAC).  On October 31, 2013, Defendants moved to dismiss the First Amended Complaint. (Mot. to Dismiss).  On November 8, 2013, Soto filed a Second Amended Complaint against Defendants adding a cause of action against Defendants in their individual capacities.  *See* (SAC).  Defendants' Motion to Dismiss the First Amended Complaint was not opposed.

Soto filed a letter with the Court arguing, *inter alia*, that the Second Amended Complaint was the operative pleading.  *See* (Letter Dated Dec. 10, 2013) [Doc. No. 84].  Soto suggests that if the Court determines that the Second Amended Complaint is not the operative pleading, then Soto's filing of the Second Amended Complaint should be construed as a motion for leave to amend his First Amended Complaint.  (*Id.*).  Defendants filed a letter in response arguing that the First Amended Complaint was the operative pleading and that the Court should not construe Soto's filing of the Second Amended Complaint as a Motion to Amend.  *See* (Letter Dated Dec. 12, 2013) [Doc. No. 85].

The Court held a hearing on December 16, 2013, on Defendants' Motion to Dismiss the First Amended Complaint.  (Minute Entry Dated Dec. 16, 2013) [Doc. No. 86].  Due to the parties' disagreement over which complaint is operative and the fact that Soto did not respond substantively to Defendants' Motion to Dismiss the First Amended Complaint, the Court ordered supplemental briefing from Soto addressing:

---

[4]     Soto has been represented by counsel since this time and subsequent filing were made through counsel.

      a.      Why the Second Amended Complaint would survive a futility challenge, and thus, should be allowed by the Court under Federal Rule of Civil Procedure 15; and

      b.      Why the First Amended Complaint would survive the Defendants' Motion to Dismiss the First Amended Complaint; and

      c.      Why the Second Amended Complaint would survive a Motion to Dismiss.

(Order Dated Dec. 16, 2013) [Doc. No. 87] (footnote omitted).  Soto submitted supplemental briefing on January 6, 2014.  (Soto's Supplemental Brief) [Doc. No. 88].  Defendants responded on January 21, 2014.[5]  (Defendants' Response to Supplemental Brief) [Doc. No. 89].

## II.    DISCUSSION

### A.    The Operative Complaint

Federal Rule of Civil Procedure 15(a)(1) provides:

A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

The parties disagree over which complaint is operative based on different readings of Federal Rule of Civil Procedure 15(a).  Defendants argue that Soto's Second Amended Complaint is inoperative because it was filed without leave of Court or Defendants' written permission.  (Defendants' Reply in Supp. of Mot. to Dismiss) [Doc. No. 78 at 2–4].  Defendants contend that Soto incorrectly "reads Fed. R. Civ. P. 15(a)(1)(B) to afford him the ability to amend his complaint once as a matter of course after **every single** motion brought by Defendants pursuant to Rule 12(b)."  (*Id.*) (emphasis in original).

---

[5]      The Court's Order stated that any response from Defendants had to be filed by January 20, 2014.  (Order Dated Dec. 16, 2013).  January 20, 2014, however, was a federal holiday.  The Court therefore accepts Defendants' submission filed on January 21, 2014, as timely.

Soto argues that the Second Amended Complaint is operative "because an amended complaint is a separate and distinct 'pleading[,]' the plain language of Rule 15 states that Plaintiff may amend his First Amended Complaint, once, as a matter of course, if Defendants file an answer or a specified Rule 12 motion."   *See* (Letter Dated Dec. 10, 2013 at 2) (footnote omitted).   Soto relies on two unpublished cases, neither from this District, to support his argument.   *See* (*id.*) (citing *Patrick v. Teays Valley Trustees, LLC*, No. 3:12-cv-39, 2012 WL 5993163 (N.D. W.Va. Nov. 30, 2012); *Powell v. Magness*, No. 12-cv-0663, 2012 U.S. Dist. LEXIS 150675 (D. Ariz. Aug. 27, 2012)).   Soto's reliance on those cases is misplaced.[6]

Other courts, considering arguments similar to Soto's, have held that "the automatic amendment provisions of [Rule] 15(a) do not apply to amendments of amended pleadings. The drafters of the Federal Rules precluded any suggestion to the contrary by providing in 15(a) that [a] party may amend his pleading **once** as a matter of course."   *Deutsch v. Health Ins. Plan of*

---

[6]   In *Patrick*, the court wrote "[t]he Plaintiffs' Second Amended Complaint is timely because it was filed within 21 days after services of a motion under Rule 12(b)."   *Patrick*, 2012 WL 5993163, at *6.   A review of the case's docket, however, shows the Second Amended Complaint in *Patrick* was actually the first time the complaint had been amended in federal court because at the time of removal to federal court, the complaint had already been amended once. *See* Amended Compl., Second Amended Compl., *Patrick*, No. 3:12-cv-39 [Doc. No. 13].   The Second Amended Complaint in *Patrick* as such is factually dissimilar from the Second Amended Complaint in this case, where both the First Amended Complaint and the Second Amended Complaint were filed with this Court.

Soto's statement that "both [the *Patrick* and *Powell* courts] affirmatively and explicitly interpreted Rule 15 such that Plaintiff's filing of his Second Amended Complaint was proper[,]"is not persuasive because neither court adjudicated the specific issue presented here. (Letter Dated Dec. 10, 2013 at 3).   In *Patrick*, plaintiffs brought a motion to amend their complaint and that court did not decide the issue of amendment as a matter of course.   *See Patrick*, 2012 WL 5993163, at *6–8.   Soto's reliance on the *Patrick* court's interpretation of Rule 15, therefore, is misplaced.   The *Powell* court, like the *Patrick* court, did not adjudicate the issue of whether a second amended complaint could be filed as a matter of right under Rule 15.   *See Powell*, 2012 U.S. Dist. Lexis 150675, at *2–3 (facing a factual situation where the plaintiff filed a second amended complaint without the court's leave or the defendant's consent and granting the defendant's motion to strike the second amended complaint as the second amended complaint was filed more than twenty-one days after service).

*Greater New York*, 573 F. Supp. 1443, 1445 (S.D.N.Y. 1983) (emphasis added) (internal quotations and footnote omitted) (addressing amendment of counter-claims as of right under Federal Rule of Civil Procedure 15(a)).  The *Deutsch* opinion further explained, "[w]ere the law otherwise, a defendant could forestall an action indefinitely by repeatedly interposing a new amended answer within succeeding 20[-] day periods ad infinitum."[7] *Id.* at *6 n.1.

Soto amended his Complaint once when he filed the First Amended Complaint.  The Court holds this is the "once" as a matter of course that Rule 15(a) allows.  If Soto's contention was correct, taken to its extreme, it would allow for an endless cycle of amended complaints and motions to dismiss preventing adjudication of the action, a prophecy similar to that which the *Deutsch* court alluded.

The Court will, however, address whether leave should be granted for Soto to amend his First Amended Complaint and to file his Second Amended Complaint.  *See* (Letter Dated Dec. 10, 2013 at 5).  Because of the similarity of the First and Second Amended Complaints, the analysis for the motion to dismiss the First Amended Complaint also is applicable to determining whether the Second Amended Complaint is futile.   Whether the First Amended Complaint survives Defendants' Motion to Dismiss will be decided before turning to whether the Second Amended Complaint is futile.

**B.      Motion to Dismiss the First Amended Complaint**

Defendants move to dismiss the First Amended Complaint under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (Mot. to Dismiss).

---

[7]      Soto points to Rule 15's 2009 advisory committee notes on amendment of the rule to support his argument, but because the Court finds the issue of which complaint is operative can be determined without delving into Advisory Committee notes, the Court does not address this argument.  *See* (Letter Dated Dec. 10, 2013 at 3–4).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of proving jurisdiction. *McConnell v. U.S. Gov't*, No. 09-cv-1273 (JRT/SRN), 2010 WL 3548475, at *4 (D. Minn. Sept. 7, 2010) (citing *VS Ltd. P'ship v. Dep't of Hous. & Urban Dev.,* 235 F.3d 1109, 1112 (8th Cir. 2000)).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a claim must include sufficient factual allegations to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss for failure to state a claim, the Court takes all factual allegations in the pleadings as true and views them in the light most favorable to the nonmoving party. *Id.*

### 1.      Eleventh Amendment Immunity

The Court first must address whether it has subject matter jurisdiction over Soto's claim in light of the Eleventh Amendment.

The Eleventh Amendment of the U.S. Constitution provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment's immunity from suit in federal court extends to state officials when "the state is the real, substantial party in interest." *Harris v. Hammon*, 914 F. Supp. 2d 1026, 1034 (D. Minn. 2012) (DSD/JJK) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. Of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002)). "Thus, the Eleventh

9

Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, as well as State Agencies, because such lawsuits are essentially 'for the recovery of money from the state.'" *King v. Dingle*, 702 F. Supp. 2d 1049, 1069 (D. Minn. 2010) (ADM/RLE) (citations omitted).  "The Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action." *Id.* (citations omitted).

One exception to state immunity under the Eleventh Amendment is that the constitutional immunity does not apply to awards for prospective relief.  *Carlson v. Ritchie*, No. 12-CV-2780 (MJD/TNL), 2013 WL 2420498, at *4 (D. Minn. June 3, 2013) (citing *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004)).  *Ex Parte Young* established the prospective relief exception, which allows "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law."  *Id.* (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 73 (1996)); *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Missouri Child Care Assoc. v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex parte Young,* 209 U.S. 123, 159–60 (1908)).  The exception is narrow and limited to "prospective injunctive relief to prevent a continuing violation of federal law."  *McGee v. Feneis*, No. 07-CV-4868 (PJS/FLN), 2009 WL 2928245, at *4 (D. Minn. Sept. 8, 2009) (citing *Mansour*, 474 U.S. at 68).

Soto's First Amended Complaint sues Defendants in their official capacities and seeks the following damages: "judgment against Defendants for an amount to be determined at trial as well as injunctive relief and specific performance, together with costs, disbursements, interest, attorney's fees, and any such other any further relief as the Court shall deem appropriate and just."  (FAC ¶ 28).  To the extent Soto is suing Defendants in their official capacity, the State of

Minnesota is the real party in interest—implicating the Eleventh Amendment immunity because Defendants are MNBCA employees. *See Bisciglia v. Lee*, 370 F. Supp. 2d 874, 878 (D. Minn. 2005); *King*, 702 F. Supp. 2d at 1069. There is neither express waiver of the State's Eleventh Amendment immunity nor any statutory abrogation of that immunity for § 1983 claims. *See Mashak v. Minnesota*, No. 11-CV-473 (JRT/JSM), 2012 WL 928225, at *10 (D. Minn. Jan. 25, 2012) *report and recommendation adopted*, 2012 WL 928251 (Mar. 19, 2012) ("Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. Minnesota has not waived its immunity from § 1983 claims, nor has the State of Minnesota consented to suit.") (internal citations omitted).

The Court finds that the Eleventh Amendment bars Soto's claim for monetary damages against Defendants in their official capacities, despite Soto's contention that in the employment context, prospective relief can include "back pay, reinstatement, front pay, and attorney fees." (Soto's Supplemental Brief. at 4) (citations omitted); *see, e.g.*, *Carlson*¸ 2013 WL 2420498, at *4 ("Eleventh Amendment immunity also bars Carlson's request for monetary damages and punitive damages. The State of Minnesota is protected from such suits in federal court, and the State has done nothing to waive its immunity."); *Aune v. Ludeman*, No. 09-CV-0015 (JNE/SRN), 2010 WL 145276 (D. Minn. Jan. 8, 2010) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1998); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Larson v. Kemper*, 414 F.3d 936 (8th Cir. 2005)); *McGee*, 2009 WL 2928245, at *4 ("It is well-settled law that suits for damages against state officials in their official capacity are barred by the Eleventh Amendment absent consent or Congressional enactment to the contrary.") (citing *Will*, 491 U.S. at 71). The Court lacks subject matter jurisdiction over Soto's claim for monetary damages against

Defendants in their official capacities; the claim fails under Federal Rule of Civil Procedure 12(b)(1).

To the extent Soto seeks prospective relief under the *Ex Parte Young* line of cases, the Court will now analyze whether the prospective, non-monetary, injunctive relief Soto seeks survives Defendants' Federal Rule of Civil Procedure 12(b)(6) challenge.[8]

### 2.    Declaratory/Injunctive Relief Claims

Soto's First Amended Complaint alleges violation of 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. The parties disagree whether Soto had a legitimate claim of entitlement to MNBCA employment sufficient to create a protectable property interest.

The Court concludes that Soto has no protectable property interest in employment because Minnesota Statute § 364[9] does not apply to the MNBCA.[10]   Moreover, even if

---

[8]    "[T]he Eleventh Amendment bars federal lawsuits against states for allegedly violating their own laws, regardless of whether the plaintiff seeks prospective relief." *Carlson*, 2013 WL 2420498, at *4 (citing *Pennhurst*, 465 U.S. at 106). Soto argues that Minnesota Statute § 364 is not the basis of his First Amended Complaint claim—42 U.S.C. § 1983 is. (Soto's Supplemental Brief at 5). Minnesota Statute § 364, according to Soto, creates a right protected by the due process clauses of the Fifth and Fourteenth Amendments. (Soto's Supplemental Brief at 5). To the extent that Soto's claims are based on an alleged violation of a state statute, Minnesota Statute § 364, Defendants are immune from suit. *See, e.g.*, *id.*

[9]    The Court adopts the language of Soto's First and Second Amended Complaints, which do not provide citations to any specific subsections of 364, which is an entire chapter including several distinct subsections. *See* (FAC ¶ 21); (SAC ¶ 21). The relevant sections, 364.03, subdivision 1 and 364.10 provide respectively:

Minnesota Statute § 364 applied to the MNBCA its consideration of Soto's OFP would not be in violation of the Statute.[11]

### i.        Protectable Property Interest

"To have a property interest in employment a person must have a legitimate claim of entitlement." *Packett v. Stenberg*, 969 F.2d 721, 724–25 (8th Cir. 1992) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "The existence of a property interest must be determined with reference to state law." *Id.* (citation omitted).  Property interests in employment are derived from "statutory or contractual limitations on the employer's ability to terminate an employee[,]" but can also be "created by implied contract, arising out of customs, practices and *de facto* policies." *Id.* at 725 (citing *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972); *Blankenbaker v. McCook Pub. Power Dist.*, 940 F.2d 384, 385 (8th Cir. 1991)).

According to Soto:

> The MNBCA made an offer for a contract with a single condition precedent, and [Soto] accepted that offer.  [Soto] satisfied that condition precedent by not having any entries on his criminal background report for which he could legally be denied employment.  Therefore, [Soto] has a legally enforceable agreement with the MNBCA, which is a protectable property interest.

(Soto's Supplemental Brief at 2) (internal citations omitted).  Soto asserts that "Minnesota Statute § 364 creates a right which is protected by the Due Process clause of the Fifth and

---

> Notwithstanding any other provision of law to the contrary, no person shall be disqualified from public employment, nor shall a person be disqualified from pursuing, practicing, or engaging in any occupation for which a license is required solely or in part because of a prior conviction of a crime or crimes, unless the crime or crimes for which convicted directly relate to the position of employment sought or the occupation for which the license is sought.

Minn. Stat. § 364.03, subdiv. 1.  "Violation of the rights established in sections 364.01 to 364.10 by a public employer shall constitute a violation of a person's civil rights."  Minn. Stat.  364.10.

[10]        See Section ii, *infra*, entitled "Exemption from Minnesota Statute Section 364."

[11]        See Section iii, *infra*, entitled "OFP as Civil Matter."

Fourteenth Amendments.  Violation of a person's due process rights by an actor under the color of state law is a violation of 42 U.S.C. § 1983."[12]  (*Id.* at 5).  Soto purports that he "has not asserted that his property right is sounded in Minn. Stat. § 364[, r]ather, a right to employment has already been well established as a protectable interest for due process considerations."  (*Id.*).

Soto's arguments are unclear.  He incongruously asserts that Minnesota Statute § 364 is and is not the basis of his protectable property interest.  *See* (*id.* at 5).  While conceding that his property right to employment is not based on Minnesota Statute § 364, Soto claims that property interests are created "by independent rules such as state law[.]"  *See generally* (*id.*).  To the extent that Soto argues that Minnesota Statute § 364 is **not** the basis of his property right to employment, he does not identify any other state statue or independent rule purporting to create this right.  *See* (*id.*).  Soto cites cases in favor of his argument that he "has not asserted that his property right is sounded in Minn. Stat. § 364[,]" but these cases actually stand for the contrary proposition—that a property interest in employment **must** derive from a city charter or a state law.  *See* (*id.*); *see, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) ("Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'") (citation omitted); *Bishop v. Wood*, 426 U.S. 341, 344 (1976) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract.  In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.") (footnotes omitted); *Moore v. Muncie Police and Fire Merit Comm'n*, 312 F.3d 322, 326 (7th Cir. 2002) ("We bear in mind that property interests are not created by the United States

---

[12]   Soto's First and Second Amended Complaints cite Minnesota Statute § 364; Soto does not provide citations to any specific subsections of 364, which refers to an entire chapter.  *See* (FAC ¶ 21); (SAC ¶ 21).

Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.") (internal citation and quotation omitted); *Spitzmiller v. Hawkins*, 183 F.3d 912, 915–16 (8th Cir. 1999) ("To claim entitlement to pre-termination due process, Spitzmiller must show that he had a protected property interest derived from a source such as state law.") (citation omitted). Therefore, to the extent that Soto argues he has a protectable property interest in employment with the MNBCA that is not derived from Minnesota Statute § 364, Soto fails to identify any other basis for the interest.  Soto's claim fails.

Because Soto also seems to argue that he has a protectable property interest in employment based on Minnesota Statute § 364, the Court will address this argument to determine whether such a claim survives a Federal Rule of Civil Procedure 12(b)(6) challenge. Defendants argue that Minnesota Statute § 364 does not provide Soto with a legitimate claim of entitlement to employment—necessary to having a property interest in it—for two reasons. (Defendants' Mem. in Supp. of Mot. to Dismiss at 7).  First, the MNBCA is a law enforcement agency not subject to Minnesota Statute § 364.  (*Id.* at 9–10).  Second, Minnesota Statute § 364 does not prohibit consideration of Soto's OFP, a civil matter, in making an employment decision. (*Id.* at 7–9).[13]

---

[13]    In addition, Defendants argue that Soto has not identified "any contractual or statutory provision that would create a property interest in employment with the [MN]BCA." (Defendants' Mem. in Supp. of Mot. to Dismiss at 7).  Soto, however, alleges a contract with one condition precedent that he met.  *See* (Soto's Supplemental Mem. at 2).  On this procedural posture, the Court will take that as true, but passing the criminal background check is still not enough to survive the motion to dismiss.

ii.      **Exemption from Minnesota Statute § 364**

Minnesota Statute § 364 specifically excludes from its reach law enforcement agencies.

*See* Minn. Stat. § 364.09.   "Law enforcement agencies" are defined as:

> (1) a unit of state or local government that is authorized by law to grant full powers of arrest and to charge a person with the duties of preventing and detecting crime and enforcing the general criminal laws of the state; and

> (2) subject to the limitations in section 626.93, a law enforcement agency of a federally recognized tribe, as defined in United States Code, title 25, section 450b(e).

Minn. Stat. § 626.84,  subdiv. 1(f).

The MNBCA is statutorily-created and is:

> A division in the Department of Public Safety . . . , under the supervision and control of the superintendent of criminal apprehension, who shall be appointed by the commissioner and serve at the commissioner's pleasure in the unclassified service of the state civil service, to whom shall be assigned the duties and responsibilities described in this section. . . . The Division of the Bureau of Criminal Apprehension shall perform such functions and duties as relate to statewide and nationwide crime information systems as the commissioner may direct.

Minn. Stat. § 299C.01, subdivs. 2, 3.

The primary mission of the MNBCA is further described in Minnesota Statute § 299C.03,

which provides:

> The [MNBCA] shall cooperate with the respective sheriffs, police, and other peace officers of the state in the **detection of crime and the apprehension of criminals throughout the state**, and shall have the power to conduct such investigations as the superintendent, with the approval of the commissioner of public safety, may deem necessary to secure evidence which may be essential to the apprehension and conviction of alleged violators of the criminal laws of the state. The various members of the bureau **shall have and may exercise throughout the state the same powers of arrest possessed by a sheriff**, but they shall not be employed to render police service in connection with strikes and other industrial disputes.

Minn. Stat. § 299C.03 (emphasis added).

16

In addition, Minnesota law provides the MNBCA with the authority to employ "peace officers;" a "peace officer" is:

> a person . . . licensed as a peace officer in accordance with section 626.84, subdivision 1, and who serves as a sheriff, deputy sheriff, police officer, conservation officer, **agent of the Bureau of Criminal Apprehension**, agent of the Division of Alcohol and Gambling Enforcement, University of Minnesota peace officer, Metropolitan Transit police officer, Minnesota Department of Corrections Fugitive Apprehension Unit member, or State Patrol trooper as authorized by section 299D.03.

Minn. Stat. § 626.05 subdiv. 2 (emphasis added).

Minnesota Statute Section 626.84 subdivision 1, which is referenced in § 626.05 subdivision 5's definition of "peace officer," provides further:

> "Peace officer" means:
>
> (1) an employee or an elected or appointed official of a political subdivision or law enforcement agency who is licensed by the board, **charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state and who has the full power of arrest**, and shall also include the Minnesota State Patrol, agents of the Division of Alcohol and Gambling Enforcement, state conservation officers, Metropolitan Transit police officers, Department of Corrections Fugitive Apprehension Unit officers, and Department of Commerce Fraud Bureau Unit officers, and the statewide coordinator of the Violent Crime Coordinating Council; and
>
> (2) a peace officer who is employed by a law enforcement agency of a federally recognized tribe, as defined in United States Code, title 25, section 450b(e), and who is licensed by the board.

Minn. Stat. § 626.84 subdiv. 1(c) (emphasis added).

The MNBCA fits squarely within the definition of "law enforcement agencies" excluded from the application of Minnesota Statute § 364.   *See* Minn. Stat. § 364.09.   In addition, Minnesota law explicitly provides that the MNBCA can employ peace officers who are defined as having full power of arrest.   *See* Minn. Stat. § 626.05; 626.84. *Contra* (Soto's Supplemental Brief at 9).

17

Finally, the MNBCA is charged with "**detection of crime and the apprehension of criminals throughout the state**" and moreover can employ peace officers who are charged "**with the prevention and detection of crime and the enforcement of the general criminal laws of the state.**"   Minn. Stat. §§ 299C.03, 626.84 subdiv. 1 (emphasis added).  These duties mirror those outlined in Minnesota Statute § 626.84 subdivision 1(f) defining "law enforcement agencies."  Minnesota law clearly defines the MNBCA to qualify under § 364's exemption of "law enforcement agencies."  Therefore, Minnesota Statute § 364 does not and cannot provide Soto with a legitimate interest in employment with the MNBCA because it does not apply to the MNBCA and Soto's claim against Defendants in their official capacities seeking prospective relief fails under Federal Rule of Civil Procedure 12(b)(6).[14]

### iii.      OFP as Civil Matter

The Court will now address whether Minnesota Statute § 364 applies to OFPs like the one that was revealed on Soto's background check.  Minnesota Statute § 364.01 explains:

> that it is the policy of the state of Minnesota to encourage and contribute to the rehabilitation of criminal offenders and to assist them in the resumption of the responsibilities of citizenship. The opportunity to secure employment or to pursue, practice, or engage in a meaningful and profitable trade, occupation, vocation, profession or business is essential to rehabilitation and the resumption of the responsibilities of citizenship.

Minn. Stat. § 364.01.

The statutory sections further provide:

> Notwithstanding any other provision of law to the contrary, no person shall be disqualified from public employment, nor shall a person be disqualified from pursuing, practicing, or engaging in any occupation for which a license is required solely or in part because of a prior conviction of a crime or crimes, unless the

---

[14]      Finally, Soto's argument that the MNBCA is not part of the Department of Corrections but is a part of the Department of Public Safety and therefore is not excluded from § 364 as a law enforcement agency fails as this is not a consideration in Minn. Stat. § 364.09.  *See* (Soto's Supplemental Brief at 9).

crime or crimes for which convicted directly relate to the position of employment sought or the occupation for which the license is sought.

Minn. Stat. § 364.03 subdiv. 1.[15]

A conviction of a crime is "limited to convictions of felonies, gross misdemeanors, and misdemeanors for which a jail sentence may be imposed.  No other criminal conviction shall be considered."  Minn. Stat. § 364.02 subdiv. 5.   Further:

The following criminal records shall not be used, distributed, or disseminated by the state of Minnesota, its agents or political subdivisions in connection with any application for public employment nor in connection with an application for a license:

(1) Records of arrest not followed by a valid conviction.

(2) Convictions which have been, pursuant to law, annulled or expunged.

(3) Misdemeanor convictions for which no jail sentence can be imposed.

Minn. Stat.  § 364.04.

The Domestic Abuse Act governs OFPs, and provides that a district court can impose an OFP against a person when there is evidence that the person, a family or household member, recently committed   "physical harm, bodily injury or assault [; or] the infliction of fear of imminent physical harm, bodily injury, or assault; or terroristic threats. . . [,] criminal sexual conduct, . . . or interference with an emergency call" against a family or household member. Minn. Stat. § 518B.01 subdivs. 1, 2.  To establish domestic abuse, a party must show "'present harm or an intention on the part of the [alleged abuser] to do present harm.'"  *Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 489 (Minn. Ct. App. 2005) (quoting *Andrasko v. Andrasko*, 443 N.W.2d 228, 230 (Minn. Ct. App. 1989)).  The decision of whether to grant an OFP is in the

---

[15]    Definitions of terms used throughout the statutory sections of Minnesota Statute § 364 are provided in § 364.02.

district court's discretion; an OFP can be issued to "restrain the abusing party from committing acts of domestic abuse." *Id.* (citing Minn. Stat. § 518B.01, subdiv. 6(a)(1) (2004) (internal quotations omitted); *Mechtel v. Mechtel*, 528 N.W.2d 916, 920 (Minn. Ct. App. 1995)).   In addressing a petition for extension of an OFP, the Minnesota Court of Appeals explained "[t]he extension of respondent's OFP against appellant is not a criminal sanction; it is a remedial civil order issued at the discretion of the district court, intended to protect respondent and the children from future abuse." *Rew ex rel. T.C.B. v. Bergstrom*, 812 N.W.2d 832, 841 (Minn. Ct. App. 2011).   An individual in violation of an OFP can be charged with a misdemeanor, gross misdemeanor, or felony depending upon the circumstances of the violation.   Minn. Stat. § 518B.01, subdiv. 14.

Here, the Court could find no decision from Minnesota Supreme Court or lower state courts on this particular issue interpreting whether Minnesota Statute § 364 applies to OFPs.[16] Nonetheless, the Minnesota Court of Appeals opined that an extension of an OFP is a civil, not criminal, matter. *See Rew*, 812 N.W.2d at 841.   The language of Minnesota Statute § 364.02, defining criminal convictions, is not ambiguous and should be construed according to common usage. *See Target*, 916 F. Supp. 2d at 912 ("Under Minnesota law, statutory interpretation begins with a determination of whether the language of a statute is ambiguous. . . .   When a statute's words are unambiguous, courts construe those words according to their common usage.

---

[16]   "In interpreting Minnesota law, federal courts are bound by the decisions of the Minnesota Supreme Court, but when the Minnesota Supreme Court has not decided an issue, federal courts must predict how the Minnesota Supreme Court would resolve the issue." *Target Corp. v. All Jersey Janitorial Serv., Inc.*, 916 F. Supp. 2d 909, 912 (D. Minn. 2013) (JNE/LIB) (citing *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006)).   "Federal courts may consider decisions of state intermediate appellate courts to be persuasive authority if those decisions 'are the best evidence of what state law is.'" *Id.* (quoting *Minn. Supply Co.*, 472 F.3d at 534).

Courts also read and construe a statute as a whole.") (internal citations and quotations omitted). Minnesota Statute § 364.02 subdivision 5 defines clearly which prior **criminal** convictions cannot be the sole reason for disqualification from public employment and provides "'[c]onviction of crime or crimes' shall be limited to convictions of felonies, gross misdemeanors, and misdemeanors for which a jail sentence may be imposed.  No other criminal conviction shall be considered."  Minn. Stat. § 364.02, subdiv. 5 (emphasis added).  Therefore the Court need not go any further and finds that Minnesota Statute § 364 does not apply to a public employer's consideration of an applicant's OFP.  Soto, thus, cannot rely on Minnesota Statute § 364 as a basis for his legitimate claim of entitlement to employment with the MNBCA.[17]   Again, Soto's claim against Defendants in their official capacities seeking prospective relief fails under Federal Rule of Civil Procedure 12(b)(6).

### iv.     Conclusion

Soto's 42 U.S.C. § 1983 claim against Defendants in their official capacity fails to withstand Defendants' Motion to Dismiss.  First, to the extent Soto seeks monetary damages, his claim is barred by the Eleventh Amendment and fails to survive Defendants' Federal Rule of Civil Procedure 12(b)(1) challenge because the Court lacks subject matter jurisdiction.  Second, to the extent Soto alleges a violation of state law as the basis for his claim for monetary or prospective relief, his claim fails because the Eleventh Amendment bars suits in federal court against a state for an alleged violation of its own laws.[18]  Third, Soto's claim for prospective, injunctive relief against Defendants in their official capacities fails under Federal Rule of Civil

---

[17]     Soto makes many statutory interpretation arguments that the Court does not address because of its finding that the statutory language is unambiguous.  *See* (Soto's Supplemental Brief at 6–8).

[18]     Soto asserts that he is not alleging a violation of state law, however, because of the confusion from the multiple iterations of pleadings, briefing, etc. in this case the Court, addresses this issue for the purpose of clarity and completeness.

Procedure 12(b)(6) because Soto has no legitimate expectation of employment with the MNBCA sufficient to create the requisite protected property interest. Therefore, the Court recommends that Defendants' Motion to Dismiss Soto's First Amended Complaint be granted.

### C.    Futility of Second Amended Complaint

Soto argues that if the First Amended Complaint is operative, the filing of his Second Amended Complaint should be treated as a motion to amend. (Letter Dated Dec. 10, 2013 at 5). If treated as a motion to amend, Soto argues that the Court should grant leave for him to file the Second Amended Complaint as the Second Amended Complaint would survive a futility challenge, which is essentially a Rule 12(b)(6) challenge of the Second Amended Complaint.[19] (Soto's Supplemental Brief at 10–11). Soto asserts that if the First Amended Complaint fails to survive Defendants' Motion to Dismiss because it only asserts a cause of action against Defendants in their official capacities, then the Second Amended Complaint cures it as it adds claims against Defendants individually. (*Id.*). As expressed before, the **only** change between the Second and First Amended Complaints is the inclusion of a claim against Defendants in their individual capacities in the Second Amended Complaint.[20]

A court has discretion to grant leave to amend, and must freely do so "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 907–08 (8th Cir. 1999). In interpreting Rule 15, the United States Supreme Court stated:

---

[19]    Defendants argue there is no precedent for Soto's filing of the Second Amended Complaint to be treated as a motion to amend. (Letter Dated Dec. 12, 2013 at 3–4). Because the Court finds the Second Amended Complaint to be futile, and especially because of how similar the two Complaints are, the Court does not address the intricacies of whether Soto should have filed a complete motion to amend.

[20]    This determination is based on the Court's review of the First and Second Amended Complaints and Soto's own assertions. *See* (Soto's Supplemental Brief at 10). No red-lined copy was filed because Soto argued that he did not need permission from Defendants or leave from the Court in filing his Second Amended Complaint. The Court has already determined that argument is not correct, as described above.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Becker*, 191 F.3d at 907–08.

Futility, one of the reasons that may prevent an amendment, exists when the claim "would not withstand a [m]otion to [d]ismiss for failure to state a claim upon which relief can be granted."  *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998) (JRT/RLE) (citations omitted); *see Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781–83 (8th Cir. 2008) (evaluating "futility" of asserted claims under Fed. R. Civ. P. 12(b)(6) standard).

Futility determinations utilize the *Twombly* "plausibility" standard under Rule 12(b)(6). *Birchwood Labs., Inc. v. Battenfeld Techs., Inc.*, 762 F. Supp. 2d 1152, 1156 (D. Minn. 2011) (MJD/JJK); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).  A party moving to amend under Rule 15(a) must support its claim with sufficient specificity to "'raise a right to relief above the speculative level [and] . . .  to raise a reasonable expectation that discovery will reveal the evidence of [the claim]'" to satisfy *Twombly*.  *Birchwood Labs.*, 762 F. Supp. 2d at 1156 (quoting *Twombly*, 550 U.S. at 555).

The Court has already determined that Soto does not have a protected property interest in employment with the MNBCA because the MNBCA is exempt from Minnesota Statute § 364 and Minnesota Statute § 364 does not apply to OFPs.  Thus Soto's § 1983 claim fails without a protectable property interest.  Therefore, the addition of naming Defendants in their individual

capacities does not cure the deficiencies of the First Amended Complaint and the Second Amended Complaint would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because it does not remedy the missing protected property interest.

Because Soto filed his Second Amended Complaint already, the Court finds that it should be stricken as filed in violation of Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15.1. *See Modena v. United States*, 06-cv-2865 (ADM/JSM), 2006 WL 3030965, at *1–2 (D. Minn. Oct. 23, 2006) (striking a pleading for not complying with applicable rules).

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Soto's Second Amended Complaint [Doc. No. 77] be stricken for failure to comply with Federal Rule of Civil Procedure 15(a);

2.    Defendants' Motion to Dismiss [Doc. No. 72] be **GRANTED**; and

3.    This case be dismissed.

Dated: February 13, 2014

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **February 27, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   This Report and Recommendation Defendants not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.